UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------x
RASIM HOT,

Petitioner,

- against -

RAUL MALDONADO JR., *in official capacity as Warden, Metropolitan Detention Center, Brooklyn, et al.*,

Respondents.
-----------------------------------------------------x

**<u>MEMORANDUM & ORDER</u>**
26-CV-5342 (PKC)

PAMELA K. CHEN, United States District Judge:

On August 28, 2026, Petitioner Rasim Hot filed a petition for a writ of habeas corpus seeking release from immigration detention on the grounds that his detention pursuant to 8 U.S.C. § 1231(a) ("Section 1231(a)") is unlawful. As of the date of this Memorandum & Order, Petitioner has been detained for 105 days, which exceeds the 90-day period in which detention is mandatory under Section 1231(a). Since Petitioner's removal is not reasonably foreseeable due to his uncertain citizenship status, his continued detention is unreasonable and no longer authorized by statute. Accordingly, the Petition for a writ of habeas corpus is granted, and he must be released immediately.

## BACKGROUND

Petitioner was born in 1968 in Dosudje, in the municipality of Plav, in what was then the Socialist Republic of Montenegro within the Socialist Federal Republic of Yugoslavia. (Pet., Dkt. 1, ¶ 20.) On March 5, 1992, Petitioner arrived in New York and was admitted to the United States on a B-2 nonimmigrant visa with authorization to remain in the United States for a temporary period not to extend past October 5, 1992. (Resp'ts' Opp'n Pet. ("Opp'n"), Dkt. 8, at 1.) Between May 1992 and April 1999, Petitioner filed applications for lawful status and was

ordered multiple times to show cause by the former Immigration and Naturalization Service why he was not deportable pursuant to various provisions of the Immigration and Nationality Act ("INA"). (*See id.* at 1–2 (citations omitted).) In April 1999, an immigration judge denied Petitioner's application for relief and granted voluntary departure. (*Id.* at 2 (citations omitted).) Petitioner was to voluntarily depart the United States before January 16, 2000. (*Id.* (citation omitted).) In May 1999, Petitioner filed an appeal of the immigration judge's decision with the Board of Immigration Appeals ("BIA"). (*Id.* (citation omitted).) On March 25, 2002, the BIA dismissed Petitioner's appeal and permitted Petitioner to voluntarily depart the United States before April 26, 2002. (*Id.* (citation omitted).) Petitioner failed to depart before April 26, 2002, which Respondents contend made the immigration judge's removal order issued in April 1999 final. (*Id.*) In 2007 and 2013, Petitioner filed successive motions to reopen his appeal with the BIA, both of which were denied within approximately one year after Petitioner filed them. (*Id.* (citations omitted).)

On June 26, 2026, United States Citizenship and Immigration Services ("USCIS") advised U.S. Immigration and Customs Enforcement ("ICE") that Petitioner had scheduled an appointment for June 30, 2026 at their Brooklyn office. (*Id.* (citation omitted).) On June 30, 2026, ICE issued a Form I-205 Warrant of Removal/Deportation ("I-205") for Petitioner and proceeded to arrest Petitioner that day after his interview with USCIS. (*Id.* (citation omitted).) On July 1, 2026, Petitioner was processed and taken to the Metropolitan Detention Center in Brooklyn, New York ("MDC") where he has since remained in detention. (*Id.* (citation omitted).) Respondents assert that the basis for Petitioner's mandatory detention is Section 1231(a). (*Id.* at 1.)

On July 14, 2026, ICE sent a travel document request to the Montenegrin Consulate. (*Id.* at 3 (citation omitted).) On August 4, 2026, ICE followed up by telephone with the Montenegrin Consulate regarding the travel document request. (*Id.* (citation omitted).)

On August 28, 2026, Petitioner filed the instant Petition seeking a writ of habeas corpus challenging the lawfulness of his continued detention. (*See* Pet., Dkt. 1.)

On August 28, 2026, ICE again followed up by telephone with the Montenegrin Consulate regarding the travel document request. (Opp'n, Dkt. 8 at 3 (citation omitted).) On September 1, 2026, an ICE Officer emailed Amer Cikotic following up on ICE's July 14, 2026 request for a travel document. (*Id.* (citation omitted).) On September 2, 2026, Mr. Cikotic replied and advised that as of December 2025, he was no longer with the New York Montenegrin Consulate, so the ICE Officer emailed the Consul General of Montenegro to follow up on his prior requests for a travel document for Petitioner. [1] (*Id.* (citation omitted).) That same day, September 2, 2026, the Consul General of Montengro, Snežana Jonica, responded and "advised that [the Consulate General] had contacted the relevant authorities in Montenegro to verify Petitioner's citizenship status, and that, once citizenship is confirmed, the Consulate General will issue a travel document within 24 hours." (*Id.* (citation omitted).)

One month later, on October 2, 2026, the Court issued a Scheduling Order directing Respondents to provide, *inter alia*, "an update on the status of verifying Petitioner's citizenship and when travel documents will be issued." (10/02/2026 Dkt. Order.) On October 5, 2026, the ICE Officer emailed the Consul General of Montenegro to follow up on ICE's prior requests for a

[1] The Court understands Respondents' references in their submissions to the "Consul General" of Montenegro to refer to a senior diplomatic official, Snežana Jonica, and the "Consulate General" of Montenegro to refer to the office of the Montenegrin diplomatic mission. Accordingly, the Court refers to these terms as such herein.

travel document. (Resp'ts' Supp. Resp. Pet. ("Supp. Opp'n"), Dkt. 10, at 1 (citation omitted).) On October 6, 2026, the ICE Officer called the Consul General to again follow up on ICE's prior requests for a travel document. (*Id.* (citation omitted).) That same day, the Consul General advised the ICE Officer that the Consul General had prepared "an urgent follow-up request for verification of Petitioner's citizenship status," and that "the request w[ould] be forwarded to the competent authorities in Montenegro by official diplomatic mail th[at] week." (*Id.* (citation omitted).) The Consul General further advised the ICE Officer that, "because parts of such requests involve hard-copy international mail, the Consulate General cannot reliably estimate when it will receive a response from the Montenegrin authorities." (*Id.* (citation omitted).)

**DISCUSSION**

Petitioner raises two issues in challenging the lawfulness of his present detention. First, he argues that "[b]ecause there is no significant likelihood of removal in the reasonably foreseeable future, [his] continued detention is no longer authorized by Section 1231(a)(6) and violates the Fifth Amendment." (Pet., Dkt. 1, ¶ 41 (citing *Zadvydas v. Davis*, 533 U.S. 678, 699–701 (2001)).) Second, he argues that Section 1231(a) did not authorize a new arrest decades after the removal period when Petitioner was accessible to ICE. (*Id.* ¶¶ 44–48.) Respondents dispute both arguments.[2] The Court agrees with Petitioner's first argument, that there is no significant

[2] Respondents also argued in their response to the Court's Order to Show Cause that various provisions of 8 U.S.C. § 1252 stripped this Court of jurisdiction to restrain Respondents from removing Petitioner from the United States while the Petition remains pending. (Opp'n, Dkt. 8, at 7–9 (citing O.S.C., Dkt. 5).) However, the Court concluded, as explained in its September 9, 2026 Order, that this argument was incorrect. (*See* 09/09/2026 Dkt. Order (collecting cases explaining that the Court had jurisdiction to issue such an order pursuant to the All Writs Act, 28 U.S.C. § 1651).) Respondents have not argued that the Court lacks jurisdiction to consider the merits of the Petition as a result of 8 U.S.C. § 1252. Nonetheless, the Court is independently obligated to ensure it has jurisdiction, which it finds it does. *See, e.g.*, *Diallo v. Lyons*, 837 F. Supp. 3d 422, 431 (E.D.N.Y. 2026) (concluding that 8 U.S.C. § 1252 did not deprive the district court of jurisdiction where the "[p]etition amount[ed] to a challenge to [petitioner's] present detention, rather than his earlier removal order, and district courts routinely maintain jurisdiction over such

likelihood of his removal in the reasonably foreseeable future, such that his continued detention is no longer authorized by Section 1231(a)(6), and that he is entitled to immediate release.[3]

## I. The Lawfulness of Petitioner's Continued Detention While ICE Attempts to Remove Him

### A. Reasonableness of Detention Beyond 90 Days Under Section 1231

There is no dispute that the claimed authority for Petitioner's detention here is Section 1231. Under Section 1231, after an order of removal becomes final, there is a 90-day removal period, during which the government "shall" remove the individual. 8 U.S.C. § 1231(a)(1). During that "90–day removal period . . . [noncitizens] must be held in custody." *Zadvydas*, 533 U.S. at 683 (citing 8 U.S.C. § 1231(a)(2)); *see also* 8 U.S.C. § 1231(a)(2)(A) ("During the removal period, the Attorney General shall detain the [noncitizen]."). After that 90-day period, noncitizens "ordered removed . . . [as] inadmissible under 8 U.S.C. § 1182," such as Petitioner, (*see* Opp'n, Dkt. 8, at 4), "may [either] be detained beyond the removal period" or "released" under supervision. 8 U.S.C. § 1231(a)(6). Thus, detention is mandatory for an initial 90-days but thereafter is discretionary.

In *Zadvydas*, the Supreme Court considered whether Section 1231(a)(6) "authorizes the [Government] to detain a removable [noncitizen] indefinitely beyond the removal period or only

---

actions"); *Mahdawi v. Trump*, 183 F.4th 103, 121 (2d Cir. 2026) (recognizing that, notwithstanding 8 U.S.C. § 1252, "in the event that removal proceedings involving a detained individual are unreasonably prolonged, [Second Circuit] precedent provides that a petitioner may file a habeas petition and challenge his detention 'on the ground that it [has] reached an unreasonable length'" (citation omitted)); *cf. id.* at 117 (concluding that 8 U.S.C. § 1252 *did* strip the district court of jurisdiction to consider claims challenging the lawfulness of petitioner's being targeted for removal while expressly distinguishing petitions that present "a challenge to the length or conditions of confinement").

[3] Since the Court finds that Petitioner's first argument entitles him to a writ of habeas corpus and immediate release, the Court does not address his second argument challenging the lawfulness of his detention.

for a period reasonably necessary to secure the [noncitizen's] removal." 533 U.S. at 682. The Court held that Section 1231(a)(6) "read in light of the Constitution's demands, limits [a noncitizen's] post-removal-period detention to a period reasonably necessary to bring about that [noncitizen's] removal from the United States. It does not permit *indefinite* detention." *Id.* at 689 (emphasis added). The Court explained that if the statute were construed to allow for indefinite detention, it would "raise a serious question" as to whether the Due Process Clause of the Fifth Amendment would "permit[ ] detention that is indefinite and potentially permanent." *Id.* at 696.

To help "guide lower court determinations," and to "limit the occasions when courts will need to make them," the Court held that six months of post-removal-order detention is "presumptively reasonable." *Id.* at 700–01. But, if a detainee provides "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," the Government must respond with evidence sufficient to rebut that showing. *Id.* at 701. Additionally, as the period of "postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely" concurrently shrinks. *Id.* at 701. "[I]f removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute." *Id.* at 699–700.

**B. Petitioner's Continued Detention is Unreasonable**

Petitioner has been detained since June 30, 2026, (*see* Opp'n, Dkt. 8, at 2), which is 105 days, and thus beyond the mandatory detention period of 90 days. Petitioner has also provided "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," *Zadvydas*, 533 U.S. at 701, given that the country he emigrated from and that is his designated country of removal, Yugoslavia, no longer exists, and his successor-state citizenship is unresolved. This obvious and undisputed obstacle—indeed, Respondents do not claim that, as a practical matter, Petitioner is presently deportable—is sufficient to satisfy

Petitioner's burden. This is particularly so given that the "showing is easier to make when the government has had many years to make arrangements to remove [Petitioner] but failed to do so." *See Jiang v. Genalo*, No. 26-CV-2402 (AMD), 2026 WL 1413915, at *4 (E.D.N.Y. May 20, 2026) (concluding that continued detention beyond the 155 days of detention that had already passed was unlawful where "the government ha[d] had 27 years since the second removal order became final to remove the petitioner from the United States"). Here, Petitioner was subject to a final order of removal beginning in 2002, (*see* Opp'n, Dkt. 8, at 2), but in the intervening 24 years Respondents never secured the cooperation from the Montenegrin government to confirm Petitioner's citizenship necessary to effectuate removal.

Respondents dispute the idea that "there is no significant likelihood of removal in the reasonably foreseeable future," (Opp'n, Dkt. 8 at 3 (quoting *Zadvydas*, 533 U.S. at 701)), because "ICE has been in contact with the Montenegrin Consulate, which has advised that, upon confirmation that Petitioner holds Montenegrin citizenship, it will issue a travel document within 24 hours," (*id.* (citation omitted)). However, the lengthy history of ICE's repeated unsuccessful attempts to *actually* secure confirmation from the Montenegrin government makes clear the timeline for removal is entirely illusory. ICE has spent nearly three months attempting to secure confirmation of Petitioner's citizenship from the Montenegrin government without any success. Respondents first requested travel documents on July 14, 2026 and received no response. (*Id.* (citation omitted).) Then Respondents followed up by phone on August 4, 2026 and made no progress. (*Id.* (citation omitted).) After Petitioner filed his Petition on August 28, 2026 challenging his detention, Respondents tried again via telephone, still without success. (*Id.* (citation omitted).) It was not until September 2, 2026 that ICE received any clear statement from the Montenegrin government that they were even attempting to verify Petitioner's citizenship

status. The trail then went cold until the Court requested a status update on October 2, 2026, prompting Respondents to follow-up with the Montenegrin Consulate General, which provided no substantive update, stating only that it would be sending its own follow-up request to the authorities in Montenegro via "hard-copy international mail" and that it "*cannot reliably estimate when it will receive a response from the Montenegrin authorities*." (Supp. Opp'n, Dkt. 10, at 1 (citation omitted) (emphasis added).) Putting aside the apparent lack of haste by ICE and the Montenegrin government to confirm Petitioner's citizenship, Respondents have offered no evidence that Montenegro is likely to ultimately confirm Petitioner's citizenship, let alone do so in the foreseeable future.[4] The mere fact that ICE has made the request for travel documents does not make removal in the foreseeable future likely. *See, e.g.*, *Camaj v. Moniz*, No. 26-CV-10011 (AK), 2026 WL 1361550, at *3 (D. Mass. May 15, 2026) ("The government's mere submission of a request for travel documents to the Consulate General of Montenegro does not adequately rebut the circumstances that form good reason to believe that [petitioner] will not likely be removed in the reasonably foreseeable future."); *Jiang*, 2026 WL 1413915, at *5 ("The government's outstanding requests for travel documents from China do not justify continued detention of the petitioner."); *Ahmed v. Freden*, 744 F. Supp. 3d 259, 267 (W.D.N.Y. 2024) ("[The Government's] active efforts to obtain travel documents from Pakistan are not enough to

[4] Neither party has put forth any facts suggesting that it is particularly likely or unlikely that Montenegro will ultimately confirm Petitioner's citizenship, though the Court notes that in another case there were particular concerns regarding whether Montenegro specifically would be able to confirm citizenship given its particular citizenship laws. *See Camaj v. Moniz*, No. 26-CV-10011 (AK), 2026 WL 1361550, at *3 (D. Mass. May 15, 2026) (noting that petitioner "asserts that he could not even acquire Montenegrin citizenship, as his parents are now United States citizens and Montenegro does not permit dual citizenship, foreclosing Montenegrin citizenship by descent"). Even though the same descent issue does not appear to be present here, the Court is cognizant that eventual confirmation of Petitioner's citizenship is not a foregone conclusion, particularly in light of Petitioner being from a country that no longer exists.

demonstrate a likelihood of removal in the reasonably foreseeable future where the record before the [c]ourt contains no information to suggest a timeline on which such documents will actually be issued."); *see also Hassoun v. Sessions*, No. 18-CV-0586 (FPG), 2019 WL 78984, at *5 (W.D.N.Y. Jan. 2, 2019) ("Diligent efforts alone will not support continued detention.").

The Court therefore concludes that "removal is not reasonably foreseeable" and "hold[s] [that] continued detention [is] unreasonable and no longer authorized by statute." *See Zadvydas*, 533 U.S. at 699–700.

## II. Petitioner is Entitled to Release

"Upon finding a constitutional violation, a district court 'may' grant a writ of habeas corpus and 'dispose of the matter as law and justice so require.'" *Rodriguez-Acurio v. Almodovar*, 811 F. Supp. 3d 274, 319 (E.D.N.Y. 2025) (quoting 28 U.S.C. §§ 2241(a), 2243), *appeal dismissed*, No. 26-219, 2026 WL 1208948 (2d Cir. Feb. 25, 2026). The "typical remedy" for "unlawful executive detention" is "of course, release." *Munaf v. Green*, 553 U.S. 674, 693 (2008); *see also Preiser v. Rodriguez*, 411 U.S. 475, 484–85 (1973) ("[T]he traditional function of the writ [of habeas corpus] is to secure release from illegal custody;" it is the "usual remedy by which a man is restored again to his liberty, if he ha[s] been against law deprived of it."). "When continued detention violates a petitioner's substantive due process right to be free from civil detention, '[o]nly immediate release [can] abate the constitutional harm.'" *Jiang*, 2026 WL 1413915, at *6 (quoting *Patin v. Trump*, No. 26-CV-0071 (GWC), 2026 WL 783664, at *5 (D. Vt. Mar. 17, 2026)). The Court therefore determines that immediate release is the only appropriate relief.

"'[D]ispos[ing] of the matter as law and justice require,' necessitates both release and narrow injunctive relief guarding against re-detention in violation of this Court's determination that the petitioner's removal is not reasonably foreseeable." *See id.* at *6 (quoting 28 U.S.C. § 2243)). Respondents are directed to seek leave from this Court should they seek to re-detain

Petitioner. Upon a motion demonstrating that Respondents have complied with all relevant and necessary requirements to justify detention, the Court will review the evidence of satisfactory compliance and, if necessary, hold a hearing to confirm compliance. *See De La Rosa Izaguirre v. Blanche*, No. 26-CV-2911 (PKC), 2026 WL 2023200, at *14 (E.D.N.Y. July 13, 2026) (ordering the same).

## CONCLUSION

For the foregoing reasons, Rasim Hot's Petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, (Pet., Dkt. 1), is GRANTED.

Respondents are hereby ORDERED to release Rasim Hot immediately, and no later than October 14, 2026, at 12:00 p.m. ET. Respondents shall release Petitioner subject to the conditions at which he was at liberty before he was detained, without any additional constraints on his liberty, including, but not limited to, electronic or GPS monitoring. Respondents must release Petitioner with all of his belongings that are in Respondents' possession, including but not limited to identification cards, clothing, and money.

Respondents shall confirm compliance with these directives in a filing on the docket by 5:00 p.m. ET on October 14, 2026.

Respondents may not administratively recharacterize the release granted by this Order as grounds to impose conditions or re-impose existing conditions in conjunction with release (including release on recognizance or similar instruments) without prior notice to and authorization from the Court.

Respondents shall not re-detain Petitioner without first moving before this Court to demonstrate compliance with all applicable regulatory, statutory, and constitutional requirements necessary to arrest and detain Petitioner. Should Respondents seek to re-detain Petitioner, they are directed to file a motion with the Court that justifies lawful detention. The Court retains

jurisdiction to review any subsequent arrest or detention of Petitioner by Respondents to ensure compliance with this Memorandum & Order.

Should Petitioner seek an award of reasonable fees and costs pursuant to the Equal Access to Justice Act, he may do so by filing a letter application on the docket within 30 days of a final judgment in this action. 28 U.S.C. § 2412(d)(1)(B).

The Clerk of Court is respectfully directed to enter judgment consistent with this Memorandum & Order and close the case.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: October 13, 2026
Brooklyn, New York